## WILLIAM STEELE v. S. A. STEELE ET AL.

**Assignment for Benefit of Creditors—Duty and Liability of Trustee.**

Where a trustee prevents the consummation of a judicial sale of trust property by asserting an unfounded claim against it, and the property is therefore resold, he will be held responsible to the creditors for the difference in the price which it brought at the last sale and the amount bid at the first sale.

**Same.**

A trustee has no right to purchase trust property at a judicial sale and pay for same out of trust funds, unless authorized by the creditors.

**Same—Sale of Debts without Consent of Creditors.**

A trustee has no right to sell debts owing the assignor at a sacrifice, without the consent of the creditors.

**Same.**

A trustee had no right to consent to the assignor collecting the debts without the consent of the creditors.

**Same.**

A trustee had no right to consent to the assignor collecting the debts transferred to him as trustee, and was properly held responsible for same.

**Same—Preferring Creditors.**

A trustee is not entitled to the exclusive privilege of having the debts of the assignor, for which he was bound, as surety, paid in full before the other creditors are allowed to participate.

APPEAL FROM HENDERSON CIRCUIT COURT.

May 28, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

So far from its being the duty of William Steele as trustee to purchase in the four lots sold by order of the court to satisfy the

lien of P. A. Blackwell, it would have been an improper conversion of the trust fund then in his hands. After the lots, however, had been bid off, by Vanbussen, he seems to have prevented a consummation of the sale by the obtrusion of his unfounded claim, which prevented the purchaser from executing bond. Whereupon the commissioner again exposed the lots to sale and Blackwell became the purchaser at the amount of his debts, which seems to have been only one-half of the original cost. William Steele should, therefore, be held liable for the difference of the price which Blackwell gave and the amount which Vanbussen bid. William Steele, so far as the evidence shows, made no mention of his claim until about the time Vanbussen was about to execute bond, therefore he could not have injuriously affected the first biddings, and as he was not bound as trustee to bid in the property for the benefit of either the insolvent debtor or his creditors his utmost liability is the difference between the two bids.

Either Salem A. Steele or his creditors could have had the property bid in, or the creditors could have authorized the trustee, William Steele, to purchase it with the trust funds, without such authority, however, it was not his duty to do so, but really to refrain from so doing.

It was, therefore, erroneous to adjudge against him the difference between the price for which these lots sold under judicial sale and the purchase price given, or what witnesses might estimate the reasonable value at.

Salem A. Steele not only authorized William Steele, as his trustee, in the deed of trust to sell any of his property at his own discretion, but joined in the deed to Clay for his undivided half of the store house and lot, and it by no means clearly appears that the sale was at a sacrifice, and as Salem A. Steele's estate demanded cash means to save other property from being sacrificed under execution sale, we are not prepared to say William Steele should be held for any more than the amount of his actual sale, and this error will be corrected on the return of the cause.

As trustee and without the consent of the creditors, he had no right to sell the debt on J. M. Dodd for $1,080 at a sacrifice of about $200, and he has properly been charged with the full amount thereof.

Nor had he a right to consent or let Salem A. Steele collect the debts transferred to him, as trustee, on Rutherford, McLean

Sweck, or other person, and he was properly held responsible for these debts, together with the moneys actually collected by him on other debts.

The dwelling house and three lots sold by execution against Salem A. Steele and purchased by William Steele previous to the deed of trust, were so purchased mainly by means furnished by Salem, and the trustee was properly charged with the amount he so recovered and credited by the amount he actually paid out thereon; and the dwelling house and lots were properly ordered to be sold for the benefit of the creditors.

And the trustee was also properly chargeable for the rents received by him from the time he got possession of the house, but as this house and the lots were not conveyed in the deed of trust William Steele should not be charged with rents anterior to his getting actual possession.

Salem A. Steele continued for a long time to reside in the house, as he had a right to do, until legally ousted, without paying rents, and even had it been included in the deed, the trustee should not be charged for his use and occupation; this error will be corrected on the return of the cause.

William Steele is not entitled to the exclusive privilege of having the debts, for which he was bound as Salem A Steele's surety, paid in full before the other creditors shall be allowed to participate; for such debts as may have been in execution and actually in the sheriff's hands, and a lien created thereby, when the deed of trust was made, if any there be, which he has had to pay, he may be entitled, by subrogation, to the creditor's lien, but this is the only principle upon which he can claim priority.

If there were any such debts, he should be permitted to manifest them His services, like the other costs, should be allowed and paid before a pro rata distribution, and then with the exceptions herein stated, the assets of Salem A. Steele should be distributed pro rata among his creditors, including the debts paid by William Steele, since the deed of trust. Salem A. Steele was clearly legally interested in making his assets in his trustee's hands as large as possible, and making them pay as much as possible of his indebtedness, and therefore not a competent witness for his creditors, but no exception to reading his deposition appears of rcord, and indeed the result would be the same as if it had been excluded, for nearly all

of his statements of facts are also established by others.   No other errors are perceived.

Wherefore, the judgment is reversed, with directions for further proceedings as herein indicated.

*William Steele, for appellant.*

*Yeaman, for appellees.*